## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**RHONDA S. MOUNTS,**
**Claimant Below, Petitioner**

**FILED**

February 13, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0001** (BOR Appeal No. 2053012)
(Claim No. 2017023827)

**BANK OF MINGO,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Rhonda S. Mounts, by Counsel Robert L. Stultz, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Bank of Mingo, by Counsel Jillian L. Moore, filed a timely response.

The issue on appeal is the compensability of the claim. On April 3, 2017, the claims administrator rejected the claim on the basis that the injury complained of was an everyday, normal life event which was not the result of employment. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision on May 30, 2018. This appeal arises from the Board of Review's Order dated December 3, 2018, in which the Board of Review affirmed the decision of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Mounts alleges that on March 27, 2017, while working at the Bank of Mingo as the head teller, she suffered a neck injury. She reported to her supervisor that she experienced sharp pain when she turned her neck to get a customer's money out of a drawer after looking at a computer monitor. She decided to drive to Logan Regional Medical Center for treatment. On the way to the hospital she began to have chest pains.

A Report of Injury was completed on March 27, 2017, stating that Ms. Mounts injured her neck due to the motion of looking from the teller screen on the right to the money drawer on the

1

left. The physician portion stated that she suffered an occupational injury. She was diagnosed with cervical disc disorder with radiculopathy. A CT scan revealed moderate to severe degenerative disc space narrowing with endplate osteophyte formation at C5-6 and C6-7, and a moderate bony foraminal stenosis on the right at C5-6 due to uncinated hypertrophy.[1]

Following the alleged injury, Ms. Mounts sought treatment with her primary care provider, Christopher Kelly, PA-C, three days later. An office note dated March 30, 2017, indicates that she was initially seen at the emergency room for neck and shoulder pain. Mr. Kelly noted that she reportedly felt pain when she rotated her head and that a CT scan revealed only degenerative findings. Mr. Kelly did not provide an opinion as to whether Ms. Mounts had suffered an occupational injury. However, Mr. Kelley ordered an MRI and referred her to physical therapy.

The claims administrator rejected the claim on April 3, 2017. The decision was based primarily on the belief that Ms. Mounts's injury was an everyday normal life event that was not a result of her employment. Ms. Mounts filed a protest letter on April 9, 2017, in which she argued that she was working at her teller screen on a computer monitor, and when she turned her head to get money from a drawer on her left, pain shot through the back of her neck. She argued that a cervical CT scan showed damage in her neck with cervical radiculopathy and cervical sprain. She reported that the emergency physician told her that her pain was likely a nerve that was being pinched. She said that her work requires her to turn her neck left to right all day long, and it should not be considered as an everyday occurrence. She noted that she has been doing the same job for twenty-six years.

On May 4, 2017, Ms. Mounts was once again seen by Mr. Kelly. She was treated for continued neck and low back pain. Her other conditions included Type II diabetes mellitus and diabetic neuropathy. She reported that she had suffered a recurrence of sharp neck and low back pain while attempting to conduct a yard sale. She described the event to be like whiplash. The assessment was low back pain and neck pain. Mr. Kelly felt that nothing precluded her from returning to work, but she would need to discuss accommodations with her employer.

Ms. Mounts was deposed on June 21, 2017. Ms. Mounts testified that on March 27, 2017, she was at her workstation, which has a teller monitor on the right and a money drawer on her left. She looked at her monitor to make sure she was doing the transaction correctly, and when she turned her neck to get the customer's money out of the drawer, she experienced a sharp pain in her neck. She continued working and later reported the injury to her supervisor. She then drove herself to Logan Regional Medical Center, which is a forty-five minute drive. She was eventually discharged and she sought treatment with Mr. Kelly, a physician's assistant. She later participated in rehabilitation at Appalachian Rehab for eight visits. She testified that physical therapy did not help her condition. She reported that she did not have her current problems prior to the incident on March 27, 2017.

---

[1]A prior CT scan of the neck was performed on March 1, 2007. The study revealed cervical spondylosis with diffuse disc bulge at C3-4 and central protrusion type disc herniation at C5-6, right greater than left, resulting in moderate to severe right neural foraminal stenosis.

Ms. Mounts was evaluated by Victor Jaramillo, M.D., on referral from Mr. Kelly, on November 29, 2017. She reported that her neck pain was constant, radiated to the left upper and left lower extremities in the form of paresthesias and weakness. She also reported that she had suffered several falls within the year in April 2017 and March 2017. Dr. Jaramillo's assessment was cervical radicular pain. Ms. Mounts was scheduled for an EMG. A report dated January 2, 2018, from Dr. Jaramillo, contained the results of the EMG/NCS. The EMG findings revealed normal results for the left muscles tested. There was no narrative section of the report.

Ms. Mounts followed up with Dr. Jaramillo on January 9, 2018, for chronic neck pain and paresthesias in both arms. The EMG/NCS revealed left ulnar entrapment neuropathy across the elbow. The EMG of the cervical paraspinal muscles did not show acute radiculopathy. Dr. Jaramillo's clinical impression was left ulnar entrapment neuropathy across the elbow and probable bilateral C5-6 radiculopathies as well as degenerative cervical spinal stenosis. He recommended a neurosurgical consultation.

The Bank of Mingo submitted a March 20, 2018, report from Randall Short, M.D., who reviewed the medical records and considered the compressibility of Ms. Mounts's cervical spine condition. Dr. Short noted that the pre-event CT scan of the cervical spine from 2007 revealed cervical spondylosis with a diffuse disc bulge at the C3-4 level and a protrusion type disc herniation at C5-6 with right greater than left uncovertebral hypertrophy resulting in moderate to severe right neural foraminal stenosis. After reviewing the March 2017 CT scan and an MRI from July 2017, Dr. Short reasoned that the mechanism of injury described by Ms. Mounts of turning her head to the left and experiencing sudden pain did not support the theory that an injury was sustained to the cervical spine in the course of and as a result of her employment. Dr. Short opined that such movement would not be expected to result in injury to the cervical spine resulting in significant degenerative changes with cervical radicular symptoms. He concluded that there was no compensable injury and that diagnostic studies revealed significant pre-existing degenerative cervical spine and disc disease unrelated to the workplace event of March 27, 2017.

The Office of Judges issued a decision on May 30, 2018. The Administrative Law Judge noted several pertinent facts. First, a pre-event CT scan in 2007 demonstrated significant preexisting degenerative conditions in Ms. Mounts's cervical spine. Second, her primary care provider, Mr. Kelly, also diagnosed a degenerative condition. Third, medical records demonstrated a history of unrelated falls. Finally, the Office of Judges reasoned that neck rotation is a commonplace movement not specifically or uniquely associated with employment. The Office of Judges ultimately concluded that while Ms. Mounts may have felt neck paid during her workday, there was no injury caused by her employment on March 27, 2017. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on December 3, 2018.

After review, we find that the Board of Review was correct in affirming decision of the Office of Judges. The medical record supports the finding that the radicular symptoms experienced by Ms. Mounts were due to chronic, ongoing degenerative changes which were not associated with her employment. The Office of Judges reasoned that she was not doing anything uniquely required

by her employment in turning or rotating her head on March 27, 2017. Ms. Mounts has failed to prove by a preponderance of the evidence that she suffered an injury as a result of her employment.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 13, 2020**

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison